FOURNET, Chief Justice
(concurring in part and dissenting in part).
I fully concur with that portion of the majority opinion holding that the plaintiff is not entitled to recover the sum of $9,373.-91 that was included in the amount of corporate franchise tax plaintiff paid for the year 1949 without protest, it only being alleged for the first time in its petition in this case — in which it seeks to recover additional franchise taxes assessed by the Collector of Revenue following a subsequent audit of plaintiff’s records, that plaintiff did pay under protest — that this sum was an overpayment inadvertently and erroneously made.
However, in view of the facts as found in the companion case handed down this day (United Gas Corporation v. Fontenot, 241 La. 488, 129 So.2d 748, No. 45,030 on our docket) between these same parties, and the holding therein with respect to these three identical items of revenue derived from the same intangible interests that are here in controversy, I cannot subscribe to the majority holding that these items of revenue, received in 1949, cannot be taken into consideration in computing the ratio applicable for the purpose of ascertaining the exact amount of franchise tax to be imposed on plaintiff for that year under the provisions of Act No. 10 of the First Extraordinary Session of 1935, as amended by Act No. 201 of 1946, the effective act during the taxable year in question, and which has for its express object the levying of “an annual franchise tax on all corporations for the privilege of carrying on, doing business, the exercising of their charters, or the continuance of their charters, within this State * *
*589 Section 1(6) of Act No. 201 of 1946 provides that “After determining the correct amount of its capital stock, surplus, undivided profits and borrowed capital as herein provided, in such form and under such regulations as the Collector may prescribe, and on forms provided by him, every domestic corporation and every foreign corporation, exercising its charter, authorized to do or doing business in this State, subject to compliance with all other provisions of law, except as otherwise provided in this Act, shall pay a tax at the rate of One Dollar and Fifty Cents ($1.50) for each One Thousand ($1,000.00) Dollars, or major fraction thereof, on the amount of its capital stock, surplus, undivided profits, and borrowed capital determined as herein provided; * * and “For the purpose of ascertaining the tax hereby imposed, every corporation subject to the tax is deemed to have employed in this State the proportion of its entire issued and outstanding capital stock, surplus, undivided profits and borrowed capital, computed on the basis of the ratio obtained by taking the arithmetical average of the following ratios:
“(a) The ratio that the net sales and other revenue attributable to Louisiana bears to the total net sales and other revenue. :¡t
“(b) The ratio that the value of all of the taxpayer’s property and assets situated or used in Louisiana bears to the value of its property and assets wherever situated or used. * * *” [1]
In Section 1(3) (b) of the Act of 1935 as amended in 1946, which is substantially the same as R.S. 47:605, it is provided that “For the purpose of ascertaining the tax hereby imposed, * * * in compiling surplus and undivided profits there shall be included all reserves other than those for definitely fixed liabilities, reasonable depreciation, bad debts, established valuation reserves, such reserves in all cases made under rules and regulations to be prescribed by the Collector.” (The emphasis has been supplied by me throughout the above provisions of the Act of 1935 as amended in 1946.)
Thus it may be seen that the legislature, in clear and unambiguous language, declared the precise method of arriving at the ratio to be used in computing the corporate franchise tax to be due the State of Louisiana in any given year. This method as set *591 out above makes absolutely no mention whatsoever of any “business situs” or “integral part of a business” and uses no language or inference giving rise to the conclusion reached in the majority opinion that by revenue “attributable to Louisiana” in the first part of the arithmetical average the legislature must have intended thereby to limit the revenue from “intangible” interests to those so “integrally” used in the corporation’s Louisiana activities as to have acquired what is termed a “business situs” in this state. It is my opinion, from the facts found in the companion case, that have been set out with great particularity, that the items in controversy are unquestionably “revenue attributable to Louisiana” for the year 1949 under the specific provisions of the first portion of the formulae to be used in arriving at the ratio on which the computation of the corporate franchise tax is to be based. See, Southern Pacific Co. v. McColgan, 68 Cal.App.2d 48, 156 P.2d 81; Pacific Western Oil Corp. v. Franchise Tax Board, 136 Cal.App.2d 794, 289 P.2d 287; and Sinclair Pipe Line Co. v. State Commission of Revenue and Taxation, 184 Kan. 713, 339 P.2d 341.
I therefore respectfully dissent from this portion of the majority opinion.
Rehearing denied.
FOURNET, C. J., and HAMLIN and McCALEB, JJ., are of the opinion a rehearing should be granted.

. The portion of Section 1(6) of Act No. 201 of 1946 beginning with “every domestic corporation” etc. is substantially the same as the language contained in the Revised Statutes of 1950, Section 47:601. Beginning with “For the purpose of ascertaining * * • ” and continuing through the remainder quoted prior to this footnote citation, these are Sections 1(4) of the 1946 amendment, and substantially the same as R.S. 47:606A, A (1), and A (2).